# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 15-67V
Filed: July 8, 2016
TO BE PUBLISHED

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
| | |
|---|---|
| J.B., | \* |
| | \* |
| Petitioner, | \* |
| v. | \* |
| | \* Attorneys' Fees and Costs; |
| SECRETARY OF HEALTH | \* Special Processing Unit ("SPU") |
| AND HUMAN SERVICES, | \* |
| | \* |
| Respondent. | \* |
| | \* |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

*Ronald Thomas Tomasko*, JSDC Law Offices, Hershey, PA, for petitioner.
*Traci R. Patton*, U.S. Department of Justice, Washington, DC, for respondent.

## DECISION ON ATTORNEYS' FEES AND COSTS[1]

**Dorsey,** Chief Special Master:

Having resolved this case via stipulation awarding petitioner $1,500,000.00 for her SIRVA, petitioner's counsel has filed a motion for attorneys' fees and costs which included $185,417.50 in attorneys' fees and $10,376.29 in litigation costs for a total of $195,793.79.  *See* ECF No. 33.  Given that this case resolved informally without a hearing, petitioner's fee request is exceedingly high.  The parties appear to have extremely different views regarding the complexity of this case, the amount of work required to resolve the case, and the ultimate amount of fees sought.  The application also presents the issue of the appropriate hourly rate for two attorneys who have never before filed a claim in the Vaccine Program and have therefore never before had their hourly rates for this program adjudicated.  For the reasons discussed below, petitioner's attorneys' fees are reduced to $82,865.00 and petitioner's costs are awarded in the amount requested.

---

[1] Because this decision contains a reasoned explanation for the action in this case, the undersigned intends to post it on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services).  In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy.  If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access.

### I.  Procedural History:

On January 23, 2015, J.B. filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq*,[2] (the "Vaccine Act" or "Program").  ECF No. 1. The petition alleged that as a result of an influenza ("flu") vaccination on January 30, 2013, petitioner suffered a "shoulder injury related to vaccine administration" or "SIRVA". Petition, pp. 28-29.  The case was assigned to the Special Processing Unit of the Office of Special Masters for expedited processing. ECF Nos. 4-5.

On April 22, 2015, respondent filed a Rule 4(c) report conceding petitioner's entitlement to compensation (ECF No. 10) and a ruling on entitlement, finding petitioner entitled to compensation for SIRVA, was issued the same day (ECF No. 11).  On February 11, 2016, respondent filed a joint stipulation executed by the parties stipulating that petitioner should be awarded $1,500,000.00. ECF No. 26.  A decision awarding petitioner damages based on the parties' stipulation was issued on February 12, 2016. ECF No. 27.

On February 24, 2016, petitioner filed a motion to redact the decision awarding compensation in this case. ECF No. 28.  The motion was granted to the extent of redacting petitioner's name to initials. ECF No. 29.  Petitioner's further request to redact the case number was denied. *Id*.

### II.  The Instant Motion and the Parties Contentions:

On April 25, 2016, petitioner's counsel filed a motion for attorneys' fees and costs which included $185,417.50 in attorneys' fees and $10,376.29 in litigation costs for a total of $195,793.79.  ECF No. 33.

On May 9, 2016, respondent's counsel filed a response to petitioner's motion which indicated that "[n]either the Vaccine Act nor Vaccine Rule 13 contemplates any role for respondent in the resolution of a request by petitioner for an award of attorneys' fees and costs." ECF No. 35, p 1.  Nonetheless, respondent also noted that:

> [R]espondent regularly proposes that the special masters award between $12,000.00 and $14,000.00 in most SIRVA cases.  While respondent acknowledges that the damages in this case were slightly more complicated than those in a "typical" SIRVA case, this case was not more complicated than other SIRVA cases that involved lost wages and future

---

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755.  Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

2

care. Respondent suggests that the special master award no more than $50,000.00 for fees and costs in this case.

*Id*. at 3.

In support of the amount suggested in this case, respondent cited a single case, *Patel v. HHS*, No. 13-851V, 2015 WL 9694641 (Fed. Cl. Spec. Mstr. Dec. 22, 2015), wherein petitioner's counsel was awarded $48,299.27 in fees and $552.15 in costs.

Among petitioner's arguments in response, petitioner contended that *Patel* is distinguishable from the instant case. ECF No. 36, pp. 3-4. Petitioner also noted that respondent's opposition failed to specifically object to either the requested hourly rates or the actual hours spent on the case and urged that the full amount of the request be awarded on that basis. *Id*. at 1.

### III.    The Special Master's Authority to Determine the Amount of Fees and Costs:

Since the petition for compensation was successful, the undersigned is required to award *reasonable* attorneys' fees and costs to petitioner. § 15(e)(1) (emphasis added). Reasonable attorneys' fees and costs in Vaccine Act cases are determined using the lodestar approach. *Avera v. HHS*, 515 F.3d 1343, 1347-48 (Fed. Cir. 2008.)

The determination of the amount of reasonable attorneys' fees is within the special master's discretion. *See, e.g. Saxton v. HHS,* 3 F.3d 1517, 1520 (Fed. Cir. 1993). Special Masters have "wide latitude in determining the reasonableness of both attorneys' fees and costs." *Hines v. HHS*, 22 Cl. Ct. 750, 753 (Fed. Cl. 1991). Moreover, Special Masters are entitled to rely on their own experience and understanding of the issues raised. *Wasson v. HHS*, 24 Cl. Ct. 482, 483 (Fed. Cl. 1991) *aff'd in relevant part,* 988 F.2d 131 (Fed.Cir.1993) (per curiam). The Special Master's determination is subject to review for abuse of that discretion. *Id*.

Petitioner "bears the burden of establishing the hours expended" and the reasonableness of the requested fee award. *Wasson,* 24 Cl.Ct. at 484. Notwithstanding respondent's failure to raise any specific objections to petitioner's fee application, "the Special Master has an independent responsibility to satisfy [herself] that the fee award is appropriate and [is] not limited to endorsing or rejecting respondent's critique." *Duncan v. HHS*, No. 99-455V, 2008 WL 4743493 (Fed. Cl. 2008). Furthermore, "the Special Master [has] no additional obligation to warn petitioners that [she] might go beyond the particularized list of respondent's challenges." *Id*.

### IV.    Determining Petitioner's Counsel's Hourly Rates:

The appropriate hourly rate for counsel in Vaccine Act litigation is the forum rate, unless the so-called "*Davis* exception" applies. *Avera,* 515 F.3d at 1349 (citing *Davis County Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. EPA,* 169 F.3d 755

(D.C.Cir.1999)); *see also Rodriguez v. HHS,* 632 F.3d 1381, 1384 (Fed.Cir.2011) (affirming a determination of the forum rate in Vaccine Act cases). The *Davis* exception applies when the bulk of the work in a case is performed outside the forum (Washington, DC, in Vaccine Act cases), and there is a very significant difference in forum rates. *Avera,* 515 F.3d at 1349. There is no bright line rule for what constitutes a difference significant enough to trigger the *Davis* exception; such a determination is within the special master's discretion. *Hall v. HHS,* 640 F.3d 1351, 1356 (Fed.Cir.2011). In addition to the evidence in the record, a special master may use her experience in the Vaccine Program to determine an hourly rate. *Id.* at 1357; *Saxton,* 3 F.3d at 1521.

In *McCulloch v. HHS*, No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015), Special Master Gowen found that a reasonable forum rate for Vaccine Program cases is: $350-425 per hour for attorneys with 20 or more years of experience, $300-375 an hour for attorneys with 11 to 19 years of experience, $275 to $350 an hour for attorneys with eight to ten years of experience, and $225 to $300 per hour for attorneys with four to seven years of experience. The undersigned finds the *McCulloch* decision, which is extensively reasoned, to be highly persuasive and adopts these rates as the forum rates for the instant analysis.

In this case, petitioner has requested an hourly rate of $375 for Ronald Tomasko and $295 for Cayla Jakubowitz, both of whom practice at JSDC Law Offices in Hershey, Pennsylvania. ECF No. 33, p. 1. Mr. Tomasko averred that he has been practicing law since 1991, suggesting 24-25 years of legal experience during the pendency of this claim. ECF No. 33, Exhibit B. He further indicated that Ms. Jakubowitz has practiced law since 2010, suggesting 5 to 6 years of experience during the pendency of this claim. *Id*. Mr. Tomasko typically practices in the areas of personal injury, workers' compensation, unemployment compensation, Social Security Disability, labor law, and municipal law. *Id.*

Based on an affidavit prepared by the firm's managing partner, Scott Dietterick, petitioner contends that these requested rates are customary for the area in which petitioner's counsel practices. ECF No. 33, p. 1 (citing Exhibit A, Affidavit of Scott Dietterick). Mr. Dietterick averred that partners in his firm bill as much as $400 per hour and associates bill as much as over $300 per hour. ECF No. 33, Ex. A, p. 1. In that regard, petitioner stresses that Hershey, Pennsylvania, which lies within the Middle District of Pennsylvania, is in close proximity to Philadelphia, Baltimore, and Washington, D.C. ECF No. 34, p. 2. Petitioner also cites two recent cases from the Middle District of Pennsylvania to support petitioner's contention regarding the prevailing local rates where petitioner's counsel practices. Those cases are *Romeo v. Simm Associates, Inc.*, No. 15-cv-2136, 2016 WL 1070827 (M.D. PA 2016) and *Stickel v. SMP Services*, LLC, No. 15-cv-252, 2016 WL 827126 (M.D.PA 2016). In *Romeo*, an attorney with 16 years of specialized experience in consumer protection law was awarded an hourly rate of $375. *Romeo*, 2016 WL 1070827, at *1. In *Stickel*, a managing partner in a case brought under the Fair Labor Standards Act was also awarded $375. *Stickel*, 2016 WL 827126, at *3.

Significantly, petitioner's counsel indicated that he typically works on a contingent fee basis. ECF No. 33, Ex. B, p. 3. Therefore, his and Mr. Dietterick's assertions regarding the specific rates charged by JSDC Law Offices are not necessarily determinative of the appropriate hourly rate. *See, e.g. Rupert v. HHS*, 55 Fed. Cl. 293, 306 (Fed. Cl. 2003) (noting the difficulty of comparing contingent fees to hourly rates); *Barber v. HHS*, No. 99-434V, 2008 WL 4145653, at *6 (Fed. Cl. Spec. Mstr. Aug. 21, 2008)(noting evidence of contingent fee agreements to be less relevant in setting hourly rates). In that regard it is also worth noting that Mr. Dietterick's affidavit is bare bones and does not provide a foundation or basis for the claimed rates beyond Mr. Dietterick's own *ipse dixit*.

Additionally, contrary to petitioner's assertion, the proximity of Hershey, Pennsylvania to Philadelphia, Baltimore, and Washington, D.C. is not determinative of whether petitioner's counsel is entitled to forum rates. Regardless of proximity, these are distinct legal markets from where petitioner's counsel practice. Rates in those locations are therefore not persuasive with regard to the specific local rates at issue. *Ramsey v. HHS*, No. 07-21V, 2009 WL 3423038 (Fed. Cl. Spec. Mstr. Oct. 7, 2009) (citing *Public Interest Group v. Unidell*, 51 F.3d 1179, 1187-88 (3rd Cir. 1995) for the proposition that the relevant geographic area for determining hourly rates of attorneys is the area served by the relevant federal district court.); *Souryavong v. Lackawanna County*, No. 13-cv-1534, 2016 WL 374462, at *9 (M.D. PA 2016)(rejecting evidence of prevailing rates in the Eastern District of Pennsylvania, which includes Philadelphia, as inapplicable when determining rates for the Middle District of Pennsylvania.); *Overly v. Global Credit & Collection Corp, Inc.*, No. 10-cv-2392, 2011 WL 2651807, at *4 (M.D. PA. 2011) (distinguishing the Middle District of Pennsylvania from "large urban legal markets like Philadelphia and the District of Columbia.") For the same reason, petitioner's citation to *Torday v. HHS*, No. 07-372V, 2011 WL 2680687 (Fed. Cl. Spec. Mstr. June 20, 2011), is equally misplaced. That decision awarded an hourly rate of $345 to an attorney practicing in Irvine, California.[3]

Although petitioner's cited cases, *Romeo* and *Stickel*, provide support for the requested rates, petitioner has been highly selective in citing these two cases. In *Stickel*, despite awarding the $375 rate, the court noted that such a rate was "relatively high." *Stickel*, 2016 WL 827126, at *3. Additionally, another partner in that same case charged only $285. *Id*. Moreover, neither *Stickel* nor *Romeo* speaks to the appropriate hourly rate for an attorney with experience comparable to Ms. Jakubowitz.

In contrast to those cases cited by petitioner, in *Souryavong*, *supra*, a civil rights lawyer from the Scranton Wilkes-Barre area with 16 years of experience was awarded $250 per hour. 2016 WL 374462, at *8-11. In *Overly*, *supra*, citing numerous prior cases, the court identified $300 per hour as the "highest hourly rate prevailing in this

---

[3] Petitioner appears to cite *Torday* mainly in support of the general notion that the requested rates are not unusually high compared to what has been awarded in prior Vaccine Act cases. Absent a showing that the awards went to similarly situated attorneys, this argument does not help to resolve the question of the appropriate rates for this case.

particular legal market" as of 2011. 2011 WL 2651807, at *5.  Although the *Overly* case was an action brought under the Fair Debt Collection Practices Act, the court's review of prevailing attorney rates was not limited to that specific type of action and encompassed prior cases involving a number of different types of cases, mostly brought on various grounds under 42 U.S.C. § 1983.[4]

The *Overly* court awarded hourly rates of $300 an hour for an attorney with 20 years of experience, $250 per hour for an attorney with ten years of experience, and $200 per hour for two attorneys with seven and four years of experience. *Id*. In light of that court's overall review of prevailing rates for the Middle District of Pennsylvania, the undersigned finds the *Overly* opinion highly persuasive.  Adjusted upward in accordance with the Consumer Price Index ("CPI") Calculator, in today's dollars these rates would be $319.10, $265.92, and $212.73. [5]

Comparing the *Overly* rates to the above-cited *McCulloch* rates, an attorney like Mr. Tomasko, with over 20 years of experience, would expect compensation at an hourly rate of between $350-425 at forum rates.  *McCulloch*, 2015 WL 5634323, at *19. In the middle district of Pennsylvania, however, a comparable rate – the *highest* prevailing rate identified by *Overly* adjusted upward for inflation – would be about $320, which is distinctly lower than even the bottom of the relevant *McCulloch* range. Whereas Mr. Tomasko's requested rate of $375 is considered "relatively high" in the Middle District of Pennsylvania (*Stickel*, 2016 WL 827126, at *3) and clearly well above the prevailing rate identified by *Overly*, it would actually fall toward the low end of the spectrum for comparably experienced attorneys under *McCulloch*.  At forum rates, Mr. Tomasko's requested rate of $375 is actually equivalent, if anything, to the $425 rate under *McCulloch*.

---

[4] Specifically, that court cited: *Haines v. Forbes Road School Dist.,* No. 07-cv-852, 2010 WL 56101 (M.D.Pa. 2010) (awarding attorneys fees under §1983 at an hourly rate of $280 (stipulated) for plaintiff's attorney in Harrisburg, PA, in case based in tort); *Diana v. Oliphant,* No. 05-cv-2338, 2009 WL 2426134 (M.D.Pa. 2009) (*rev'd on other grounds*) (awarding attorneys' fees under §1983 at hourly rates of $260 and $250 for Harrisburg, PA, attorneys in a case based on violations of Fourth Amendment, Title III, and Pennsylvania Wiretap Act); *Buck v. Stankovic,* No. 07-cv-717, 2008 WL 4072656 (M.D.Pa. 2008) (finding a range of reasonable rates at local rates for civil rights attorneys of varying experience between $160 and $300 per hour in Scranton, PA, in a case based on due process and equal protection violations for undocumented immigrant); *Lohman v. Borough,* No. 05-cv-1423, 2008 WL 2951070 (M.D.Pa. 2008) (awarding attorneys' fees under §1983 at an hourly rate of $215 to a Pittston, PA, attorney practicing employment law in a case brought for wrongful termination); *DIRECT TV v. Walsh,* No. 03-cv-72, 2006 WL 3308668 (M.D.Pa. 2006) (awarding hourly rates ranging between $175–$200 under 47 U.S.C. § 605(a) in a case involving unlawful signal interception and unlawful possession of a telecommunications device ); *Jackson v. National Credit Adjuster, LLC,* No. 08-cv-480, 2009 WL 367408 (M.D.Pa. 2009) (awarding fees under the Fair Debt Collection Act at a stipulated rate of $250 per hour.).

[5] *CPI Inflation Calculator,* U.S. Bureau of Labor Statistics, http://data.bls.gov/cgi-bin/cpicalc.pl (last accessed May 31, 2016) ("CPI Calculator"); *see also Hocraffer v. HHS*, No. 99-533V, 2011 WL 3705153, at *17-19 (Fed. Cl. Spec. Mstr. July 25, 2011), *mot. for review den'd*, 2011 WL 6292218 (Fed. Cl. Nov. 22, 2011) (applying CPI calculator in adjusting hourly rate to account for inflation).

Turning to Ms. Jakubowitz, an attorney with comparable experience would be compensated at a forum rate of $225-300 per hour under *McCulloch*. Under the inflation-adjusted *Overly* rate, such an attorney would receive approximately $213. Whereas Ms. Jakubowitz's requested rate of $295 would fall at the highest end of the spectrum for similarly situated attorneys (those with four to seven years of experience) under the forum rates, the requested rate would place her well in excess of the rate identified for attorneys with *ten or more* years of experience as identified by *Overly*.

Based on all of the above, the undersigned finds that the local rate in Hershey, Pennsylvania is very significantly lower than the forum rate and that an appropriate rate for Mr. Tomasko is $350 per hour and an appropriate rate for Ms. Jakubowitz is $250 per hour[6], reflecting the highest prevailing rate for attorneys with comparable experience practicing in the relevant local legal community. Although these rates are somewhat higher than the above-discussed *Overly* rates, petitioner's counsel has provided limited case law suggesting that somewhat higher rates have been awarded. Moreover, the quality of petitioner's ultimate work product was high. *See, e.g. Rupert v. HHS*, 52 Fed. Cl. 684, 688 (Fed. Cl. 2002) (noting that "[i]n the typical lodestar analysis, the parties present a range of market rates for lawyers of differing skill levels, and the court interpolates the prevailing market rates by assessing and applying the skill demonstrated in the instant case to that range.") Counsel presented this case with a detailed, informative, and accurate petition, and counsel navigated the court's procedures well and resolved the damages in this case, which were relatively complex for a SIRVA, within a year and a half and without the necessity for a hearing or ruling on damages. As petitioner's counsel stressed in the fee application, counsel achieved a very good result for petitioner ($1,500,000.00 for a SIRVA is unusually high). Additionally, the undersigned finds it significant that respondent failed to object to petitioner's counsel's requested hourly rates.[7]

---

[6] Although attorneys with experience comparable to Ms. Jakubowitz were awarded the equivalent of $212.73 in *Overly*, it was specifically noted that those attorneys had "lesser roles" in the litigation at issue. *Overly*, 2011 WL 2651807, at *5. In this case, the billing records show that Ms. Jakubowitz was highly involved. Thus, to the extent the limited involvement of the *Overly* attorneys appears to have been a factor in determining their rate, Ms. Jakubowitz warrants a higher rate. Moreover, the quality of the attorney work warrants a higher rate for both Mr. Tomasko and Ms. Jakubowitz.

[7] The undersigned is mindful both that she has an independent obligation to weigh the factors involved in setting petitioner's hourly rate and that respondent has disclaimed any role for respondent in determining an award for attorneys' fees and costs. ECF No. 35, p. 1. Nonetheless, respondent has historically been given the opportunity to raise objections to applications for attorneys' fees and costs, and respondent has, in fact, availed herself of that opportunity in this case, albeit in a not very meaningful way, suggesting that petitioner's counsel be awarded $50,000.00. Respondent opted not to raise any issue with petitioner's requested hourly rate, and instead focused solely on whether the complexity of the case warranted the total amount of fees sought. ECF No. 35, p. 3. Thus, while respondent's lack of objection to the requested hourly is not in itself determinative, it remains a factor to be considered.

## V.     Determining the Appropriate Number of Hours in This Case:

In determining the amount of reasonable hours, a special master has discretion to exclude hours expended that are "'excessive, redundant, or otherwise unnecessary'" based on his or her experience or judgment." *Hocraffer v. HHS*, 2011 WL 6292218, at *3 (Fed. Cl. 2011).  The fee applicant bears the burden of documenting hours that are reasonable and the special master is not obligated to evaluate a fees petition on a line-by-line basis. *Id.* at *3, 13.  Rather, particularly where billing entries are cryptic or inadequately described,[8] the Special Master may determine whether the claimed hours are reasonable based on her experience and the context of the Vaccine Program. *Wasson v. HHS*, 24 Cl. Ct. 482, 483-84 (Fed. Cl. 1991), *aff'd* 988 F.2d 131 (Fed. Cir. 1993). That is, special masters are permitted to use "a global – rather than line-by-line – approach to determine the reasonable number of hours expended." *Hocraffer*, 2011 WL 6292218, at *13.

In this case, petitioner's counsel is requesting compensation for a total of 541.7 hours.  ECF No. 33, p. 1.  Based on the undersigned's review, 321.3 of those hours were billed by Mr. Tomasko and 220.4 were billed by Ms. Jakubowitz.[9] ECF No. 33, Ex. B, Ex. 1. Petitioner argues that these hours were reasonably billed, because the instant case was complex and the ultimate amount of petitioner's award warrants a concomitantly high award for attorneys' fees and costs.  ECF No. 36, p. 3. Petitioner stresses that "this case is different from a 'typical' SIRVA case" (ECF No. 36, p. 2) and contends that "the substantial amount of work counsel performed prior to filing the Petition saved an incredible amount of time in avoiding litigation on the issue of liability" (ECF No. 34, p. 2).

Petitioner's argument conflates the severity of petitioner's injury with the complexity of the case at hand.  Although petitioner's $1,500,000.00 judgment clearly speaks to the fact that, as petitioner contends, this was not a "typical" SIRVA case, this is not an adequate barometer of the complexity of the case.  Upon filing, this case was assigned to the Special Processing Unit ("SPU"), a program intended for cases alleging injuries that have historically resulted in settlement. ECF Nos. 4-5.  Respondent conceded entitlement within approximately three months of filing. ECF No. 10.  The parties reached a tentative settlement agreement approximately six months later. EFC No. 23.  There were no hearings of any kind in this case and the entire case was

---

[8] Attorneys are cautioned about such billing practices in the *Guidelines for Practice Under the National Vaccine Injury Compensation Program* (available on the court's website at http://www.cofc.uscourts.gov/sites/default/files/GUIDELINES-FOR-PRACTICE-4212016.pdf). Section X, Chapter 3, explains the requirements of an application for fees and costs, including the instruction that "[c]ontemporaneous time records should indicate the date and specific character of the service performed." *Vaccine Guidelines*, p. 68.  Attorneys are further advised that "[e]ach task should have its own line entry indicating the amount of time spent on that task" and that "[l]umping together several unrelated tasks in the same time entry frustrates the court's ability to assess the reasonableness of the request." *Id*.

[9] Petitioner's application did not provide separate totals for each attorney.

resolved in approximately a year and a half. Thus, contrary to petitioner's claim, this was not a complex case. Petitioner's citation to *Walther v. HHS*, 00-426V, 2008 WL 5102523 (Fed. Cl. Spec. Mstr. Nov. 14, 2008), is inapposite. Although petitioner is correct that the *Walther* case resulted in approximately $180,000.00 in attorneys' fees and costs, that case proceeded to a hearing with testimony from five experts and resulted in an appeal to the Federal Circuit. It is not at all comparable to the instant case.

Moreover, the undersigned finds little basis for petitioner's suggestion that counsel's extensive billing resulted in less litigation. The lack of litigation in this case is mostly attributable to the nature of the case at hand. In keeping with the streamlined nature of SPU, the undersigned notes that as of this writing no SPU case has been awarded attorneys' fees and costs in excess of $64,000.00. This represents a population of over 300 recent cases in which attorneys' fees have been awarded in cases which, regardless of injury, resolved without hearing or extensive litigation like the instant case. Moreover, it includes the *vast majority* of SIRVA cases filed over the past two years.[10]

Importantly, other SPU cases with complex damages severe enough, as with the instant case, to warrant unusually high compensation have not resulted in higher than normal attorneys' fees and costs. *See, e.g. R.T. v. HHS*, No. 14-683V, 2015 WL 1345961 (Fed. Cl. Spec. Mstr. Mar. 2, 2015) (awarding $29,401.01 in attorneys' fees and costs in a case of disseminated viremia and death in which petitioner was awarded $1,100,894.22 in damages); *Abel v. HHS*, No. 14-1232V (Fed. Cl. Spec. Mstr. Sept. 18, 2015)(unpublished)[11] (awarding $30,999.20 in attorneys' fees and costs in a case of Guillain-Barre Syndrome ("GBS") in which petitioner was awarded $926,436.22). Among SPU cases in which fees have been awarded, the highest award of fees and costs to date is $63,723.09. *Pierce v. HHS*, No. 14-881V, 2016 WL 3208056 (Fed. Cl. Spec. Mstr. May 9, 2016)(awarding $63,723.09 in attorneys' fees and costs in a case of GBS in which petitioner was awarded $1,173,515.77 plus an amount to purchase an annuity).

The undersigned notes that respondent has agreed that this case was "slightly more complicated" than a typical SIRVA case and proposed total attorneys' fees and costs in the amount of $50,000.00. ECF No. 35, p. 3. This would constitute a larger award of fees and costs than in most SPU cases. Nonetheless, there clearly remains a large gulf between respondent's characterization of the case as "slightly" more complicated and petitioner's view of the case as warranting attorneys' fees comparable

---

[10] *Patel v. HHS*, cited by respondent, was not an SPU case. It was filed in 2013 prior to the inception of SPU in July of 2014. *Patel v. HHS*, No. 13-851, 2015 WL 9694641 (Fed. Cl. Spec. Mstr. Dec. 22, 2015). The undersigned also notes that in most SPU cases prior to February 2016, attorneys' fees and costs were resolved via stipulation between the parties. In such cases the amount initially requested by petitioners' counsel prior to negotiations with respondent is not known.

[11] Available on the court's website at https://ecf.cofc.uscourts.gov/cgi-bin/show_public_doc?2014vv1232-28-0.

to a case, such as *Walther*, which was pending and actively litigated for eight years. Moreover, the above-cited SPU cases illustrate that petitioner's intimation that the amounts of damages and attorneys' fees are, or should be, directly proportional (*see, e.g.* ECF No. 36, p. 4, fn. 6) is untrue.

In addition, review of petitioner's counsel's billing records reveals a number of deficiencies. These deficiencies further suggest that a reduction in the number of hours billed would be appropriate regardless of the above.

Most noteworthy, the undersigned's review of the billing in this case revealed that Mr. Tomasko billed 27.1 hours that were accounted only as "Reviewed file." ECF No. 33, Ex. B, Ex. 1, *passim*. Ms. Jakubowitz similarly billed 15.6 hours with the exact same description. *Id*. While some time may legitimately be devoted to reviewing a client file, the undersigned notes that the majority of counsel's additional billing entries also included file review as part of the description. Moreover, some of the "Reviewed file" entries are *patently* inappropriate. For example, between July 1, 2014, and July 10, 2014, Mr. Tomasko billed an hour of time for file review over the course of four different days, despite the fact that neither he nor Ms. Jakubowitz performed any other task related to the case during that period. The next activity in the case was a conference call with the client on July 14, 2014, which itself also included time billed for reviewing the file. Thus, the undersigned will not compensate petitioner's counsel for any billing entry marked as "reviewed file" as this entry is too vague, especially given the total number of hours billed in this case. *See, e.g. Velasquez v. HHS*, 00-117V, at *3 (Fed. Cl. Spec. Mstr. Mar. 4, 2005)(unpublished)[12] (finding hours billed as "unexplained review of the file" as excessive). Accordingly, Mr. Tomasko's hours are reduced by 27.1 hours and Ms. Jakobowitz's hours are reduced by 15.6 hours.

In addition, the undersigned finds that petitioner's counsel billed for an excessive amount of time communicating with their client. By the undersigned's tabulation, more than 50% of counsel's billing entries are devoted to or include some form of communication with the client. This includes conferences, e-mail, telephone conversation, texts, and letter writing. Several of these communications were multiple hours long and most included no description as to the purpose of the communication. In some instances the communication appears totally unnecessary. Moreover, many of these communications occur when little else is being done on the case. For example, from March 31, 2014, to April 16, 2014, petitioner's counsel recorded eight separate instances of communication with the client, totaling 5.3 hours of billing, yet nothing else was done during that period. Special Masters have previously reduced fees on this basis. *See, e.g. Wadie v. HHS*, 99-493V, 2009 WL 961217 (Fed. Cl. Spec. Mstr. Mar. 23, 2009). Accordingly, all billing entries including communication with petitioner are reduced by 50%. In total, the undersigned's review of the billing records identified 283.5 hours billed by Mr. Tomasko and 7.5 hours billed by Ms. Jakubowitz as relating

---

[12] Available on the court's website at http://www.cofc.uscourts.gov/sites/default/files/opinions/GOLKIEWICZ.VELASQUEZ030405.pdf.

primarily, and in most instances exclusively, to client communication.[13] Thus, the undersigned reduces Mr. Tomasko's hours by 141.8 and Ms. Jakubowitz's hours by 3.8.[14]

      The undersigned also notes that the billing records are often too vague to determine the true nature of the task being performed. For example, an entry on February 28, 2016, describes "attention to letters to healthcare providers." An entry on July 31, 2014, states "begin preparation of Vaccine Claim." Another entry on October 14, 2014, simply says "attention to VICP claim." Special Masters have previously reduced fees for this reason as well. *See, e.g. Stone v. HHS*, No. 90-1041V, 2010 WL 3790297, at *5 (Fed. Cl. Spec. Mstr. Sept. 9, 2010)(deducting 10% from requested hours due to excessive and vague billing). This vague billing is further significant, because counsel has not billed any time for paralegal assistance and several billing entries are suggestive of tasks which could have been done by a paralegal. Ordinarily, when attorneys bill for work which could have been done by a paralegal, the hours are accepted, but the rates are reduced to paralegal rates. *See, e.g. Riggins. v. HHS.*, 99-382V, 2009 WL 3319818, at *20 (Fed. Cl. Spec. Mstr. June 15, 2009), *aff'd* 406 Fed. Appx. 479 (Fed. Cir. 2011); *Turpin v. HHS.*, No. 99-535V, 2008 WL 5747914, at *5-7 (Fed. Cl. Spec. Mstr. Dec. 23, 2008). In this case, however, it is impossible to do so, not only because of the vague billing entries, but also because petitioner's counsel has grouped multiple activities into single time entries. This is frowned upon and makes a line-by-line analysis nearly impossible. *See, e.g. Riggins, supra*, at *23-24. Therefore, the undersigned reduces the total hours billed in this case by a further 20% for vague billing descriptions and for block billing, resulting in a reduction of 30.5 hours for Mr. Tomasko and 40.2 hours for Ms. Jakubowitz.[15]

      In light of all of the above, the total reduction of Mr. Tomasko's billing amounts to 199.4 hours and the total reduction of Ms. Jakubowitz's billing amounts to 59.6 hours. This represents a deduction of 27.1 and 15.6 hours respectively for improper billing of file review along with a further 50% reduction for all entries involving client communication, and a further 20% reduction of the resulting totals for vague entries and block billing. These reductions account both for the above-described billing deficiencies as well as the overall context of this case as an SPU case which resolved without

---

[13] Due to petitioner's counsel's block billing and vague billing descriptions described below, the tallied billing entries necessarily included some instances where additional tasks which were not related to client communication were also included; however, the cited figures do not include billing entries for which client communication was noted in connection with other substantial tasks. Moreover, this overlap was accounted for in determining the amount of the undersigned's reductions.

[14] Although 7.5 hours of client communication is not necessarily excessive in itself, a reduction in Ms. Jackubowitz's billings related to client communication is warranted in light of the overall excessive amount of client communication in this case. The resulting reductions in billing for both Mr. Tomasko and Ms. Jakubowitz are rounded to the nearest tenth of an hour.

[15] These figures represent a 20% reduction in total hours after accounting for the above-described reductions for entries marked as "reviewed file" and for excessive client communication, which left Mr. Tomasko's total hours at 152.4 and Ms. Jakubowitz's total hours at 201. The reduction in Mr. Tomasko's billing is rounded to the nearest tenth of an hour.

11

hearing or protracted litigation. Such a reduction is well within the undersigned's discretion. *Saxton,* 3 F.3d at 1521-22 (approving the special master's elimination of 50 percent of the hours claimed); *Guy v. HHS*, 38 Fed. Cl. 403, 406 (Fed. Cl. 1997) (affirming the special master's reduction in the number of hours from 515.3 hours to 240 hours); *Edgar v. HHS*, 32 Fed. Cl. 506 (Fed. Cl. 1994) (affirming the special master's awarding only 58% of the numbers of hours for which compensation was sought). Therefore, the undersigned finds that the number of hours reasonably billed in this case amount to 121.9 hours for Mr. Tomasko and 160.8 hours for Ms. Jakubowitz.

### VI. Petitioner's Costs

Petitioner has requested litigation costs in the amount of $10,376.29. ECF No. 33, p. 1. This includes $4,827.00 for vocational testing and expert services, $1950 for an economic report, and $2,500.00 for a retainer for a life care planner. ECF No. 33, Ex. C, Exs. 1-2. In accordance with General Order No. 9, petitioner filed an affidavit indicating that these expenses were incurred by petitioner herself. ECF No. 33, Ex. C.

In her response, respondent objected only to the charge of $2,500.00 for a life care plan. ECF No. 35, p. 4, fn. 3. Respondent contended that no site visit ever occurred and that the case settled without any life care plan being developed. *Id*. Petitioner countered that while the case did settle without the life care planner, that outcome was not known at the time of retention and the retainer fee was non-refundable. ECF No. 36, p. 5.

Petitioner is correct that the ultimate outcome of the case is not determinative of whether, at the time of retention, it was reasonable to seek the services of a life care planner. *See, e.g. Stone*, 2010 WL 3790297, at *4 (finding minimal consultation with a life care planner reasonable to assess possible settlement value in a case where entitlement was ultimately denied). Additionally, it was respondent that informed the court via joint status reports that the parties had conferred and agreed to engage separate life care planners. *See* ECF Nos. 17, 18. And, in any event, respondent has not actually disputed that the retainer was non-refundable.

In light of the above, the undersigned finds no cause to reduce the requested costs. Therefore, petitioner is awarded $10,376.29 in litigation costs.

### VII. Conclusion

Based on all of the above, the undersigned finds that petitioner's counsel is entitled to reasonable attorneys' fees as follows:

| | |
|---|---|
| 121.9 Hours (at $350 per hour) for Mr. Tomasko: | $42,665.00 |
| 160.8 Hours (at $250 per hour) for Ms. Jakubowitz: | $40,200.00 |
| **Total Attorneys' Fees Awarded:** | **$82,865.00** |

Additionally, the undersigned finds that petitioner is entitled to costs in the amount of $10,376.29.

**Accordingly, the undersigned awards the total of $93,241.29[16] as follows:**

- **A lump sum of $82,865.00, representing reimbursement for attorneys' fees and costs, in the form of a check payable jointly to petitioner and petitioner's counsel,  Ronald T. Tomasko, Esq., of JSDC Law Offices; and**

- **A lump sum of $10,376.29.00, representing reimbursement for petitioner's costs, in the form of a check payable to petitioner.**

The clerk of the court shall enter judgment in accordance herewith.[17]

**IT IS SO ORDERED.**

>             **s/Nora Beth Dorsey**
>             Nora Beth Dorsey
>             Chief Special Master

---

[16] This amount is intended to cover all legal expenses incurred in this matter.  This award encompasses all charges by the attorney against a client, "advanced costs" as well as fees for legal services rendered.  Furthermore, § 15(e)(3) prevents an attorney from charging or collecting fees (including costs) that would be in addition to the amount awarded herein.  *See generally Beck v. HHS.,* 924 F.2d 1029 (Fed. Cir.1991).

[17] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.